**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARIA DELOS SANTOS AVILLA,**<br><br>                                  **Plaintiff,**<br><br>v.<br><br>**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**<br><br>                                  **Defendant.** | Civ. No. 15-2857 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

     The plaintiff, Maria Delos Santos Avilla, action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1600–1637. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

**I.    PROCEDURAL BACKGROUND**

     Plaintiff seeks to reverse an ALJ's finding that she was not disabled from October 5, 2008, the alleged onset date, through February 7, 2014. She applied for DIB on May 2, 2012, and for SSI on April 24, 2012. (R. 20)[1] Her claims were denied initially and then on reconsideration on November 15, 2012. On

---

[1]     Pages of the administrative record (ECF no. 8) are cited as "R. __."

November 13, 2013, ALJ Richard West conducted an administrative hearing, at which Plaintiff testified and was represented by counsel. (R. 32–49)

On January 6, 2014, ALJ West issued his decision denying Plaintiff's application. (R. 20–27). The Appeals Council denied Jimenez's request for review (R. 1–9), rendering the ALJ's decision the final decision of the Commissioner.

## II. STANDARD OF REVIEW AND REQUIRED FIVE STEP ANALYSIS

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify for either, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a

preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007) (not precedential).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper

to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc.*

*Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

ALJ West properly followed that process, finding Plaintiff non-disabled at step four. His conclusions may be summarized as follows.

At step one, the ALJ determined that Plaintiff had met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since October 5, 2008. (R.22 ¶¶ 1, 2) At step two, the ALJ found that Plaintiff had the following severe impairments: "depression and anxiety (20 CFR 404.1520(c) and 416.920(c))" (R. 22 ¶ 3)

At step three, the ALJ determined that Plaintiff's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 23 ¶ 4)

The ALJ defined Plaintiff's residual functional capacity (RFC) as follows:

> 5. ... [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions, occasionally interact with the general public and occasionally travel to unfamiliar places.

(R. 24 ¶ 5)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a "laborer/house and office cleaner (381.687-014)(SVP 2)" as actually and generally performed. (R. 26 ¶ 6)

Based on that step 4 finding, the ALJ found that Plaintiff had not been under a disability from October 5, 2008, through the decision date of February 7, 2014. (R. 26 ¶ 7)

The ALJ therefore did not proceed to step five.

5

## III. CLAIMANT'S TESTIMONY AND MEDICAL EVIDENCE

I summarize some of the more important testimony and medical evidence.

### A. Testimony

Plaintiff moved from Puerto Rico to the mainland United States on March 31, 2012. (R. 37)[2] In April–May 2012, Plaintiff submitted an application for benefits that contained a disability report claiming depression, anxiety, and high blood pressure. (R. 196)

Plaintiff submitted a work history in which she said she cleaned offices and also was self-employed as a housekeeper. A typical workday involved four hours of walking and no more than one hour of standing. She would lift not more than ten pounds. (R. 218–19)

Plaintiff submitted function reports on May 8, 2012, and September 17, 2012. She stated that in a typical day she woke up, showered, made her bed, and prepared breakfast. When Plaintiff felt well, she would help her granddaughter get ready for school, help prepare meals, wash dishes, and do some cleaning. (R. 209–12) Plaintiff stated that she went out 2–3 times per week, and would visit her uncle in New York. She shopped with her daughter and could count change. She does not like talking to people, but talked to family members twice per week and attended church nearly every Sunday. (R. 212–13, 241–42)

At the administrative hearing, Plaintiff testified that her old cleaning job had required her to lift buckets of water estimated to weigh 20 to 40 pounds. (R. 39) She said she stopped working in 2008 because of back pain, gastritis, headaches, nausea, panic attacks, and depression, which she had suffered for a long time. (R. 39) She said she suffers from nerves and panic attacks, which occur 15 times per month. Her depression, she testified, causes her to lie in

---

[2] Plaintiff was born in the Dominican Republic and is a naturalized U.S. citizen. (R. 37–38)

6

bed and cry daily. (R. 41–44) She was seeing a psychiatrist every month or two. She receives medication, but nevertheless has the panic attacks and the depression "[a] little." When she does have a panic attack, it can last for hours. (R. 45).

Plaintiff also claimed at the hearing that she had suffered from back pain since a car accident at the age of 28 (35 years ago). (R. 44) Her counsel acknowledged that this was not "documented" and that it was "a little late" to start claiming it, and referred to a parallel application for retirement benefits. (R. 45) Counsel acknowledged that the claimed mental impairment was "the main argument" and the main impediment to work. (R. 48)

### B. Treatment and Evaluation records

#### 1. Mental impairments

On June 4, 2012, Plaintiff, complaining of depression and anxiety, underwent a biopsychosocial evaluation at Mount Carmel Guild Behavioral Health System. (R. 275). Their mental status assessment was that Plaintiff was anxious with below average intellectual functioning, but fully oriented with an intact memory, cooperative attitude, unremarkable behavior, normal speech, intact thought processes, normal affect, fair judgment, and fair insight (Tr. 275-81).

On June 19, 2012, state agency psychological consultant Sharon Flaherty, Ph.D., conducted a psychiatric review technique assessment. Flaherty found that Plaintiff had mild daily living activity restrictions, moderate social functioning difficulties, moderate concentration, persistence, or pace difficulties, and no extended-duration decompensation episodes (R. 60). Performing an RFC assessment, Dr. Flaherty concluded that Plaintiff could understand, remember, and follow short/simple instructions; could learn and perform simple, routine tasks; and could interact minimally (R. 61–63). Ellen Gara, Psy.D., reviewed Plaintiff's file on reconsideration and agreed with Dr. Flaherty's conclusions. (R. 86).

On August 21, 2012, Plaintiff returned to Mount Carmel for a psychiatric evaluation. She complained of anxiety and panic attacks that increased following her brother's suicide (R. 273). Dr. Hammond concluded that Plaintiff's mood was depressed, but her thought processes were coherent. She displayed no hallucinations or suicidal/homicidal ideations, and her impulse control was adequate (R. 274).

On January 18, 2013, Plaintiff returned to Mt. Carmel and reported feeling better (Tr. 292). Dr. Hammond reported normal speech, goal-directed thought processes, clear sensorium, intact concentration, fair insight, fair judgment, and good impulse control (R. 292).

On March 19, 2013, Plaintiff returned to Mt. Carmel and reported being very depressed and anxious, but Dr. Hammond found that Plaintiff's anxiety and depression had lessened. (R. 290). Dr. Hammond again found normal speech, goal-directed thought processes, clear sensorium, intact concentration, fair insight, fair judgment, and good impulse control (Tr. 291).

On May 27, 2013, Plaintiff had a follow-up appointment with Dr. Hammond. Dr. Hammond's exam again found Plaintiff depressed, but with normal speech, goal-directed thought processes, clear sensorium, intact concentration, fair insight, fair judgment, and good impulse control (R. 290).

On May 31, 2013, Ernesto L. Perdomo, Ph.D., conducted a consultative psychological evaluation for the state disability agency. Plaintiff complained of "nervous problems" and panic attacks, particularly in crowds and confined areas. She expressed feelings of depression, but had no history of psychiatric hospitalization or outpatient psychiatric treatment (R. 282). Her medications included amitriptyline and alprazolam (apparently sent to her from the Dominican Republic). (R. 292) Dr. Perdomo's evaluation was that Plaintiff had a depressed/anxious mood and low intelligence, but was fully oriented with organized and focused thought processes, coherent and relevant speech, remarkable, full, and appropriate affect, and fair short-term memory, long-term memory, and concentration. (R. 283–84)

8

On August 26, 2013. Dr. Hammond found that Plaintiff was "mildly depressed" with normal speech, goal-directed thought processes, clear sensorium, intact concentration, fair insight, fair judgment, and good impulse control (R. 289).

### 2. Physical impairments

On May 21, 2012, Rambhai C. Patel, M.D., conducted a physical consultative exam for the state disability agency. Plaintiff complained of hypertension, chest tightness, and shortness of breath, as well pain from her neck to her lower back without radiation (R. 261-62). Dr. Patel's exam revealed that Plaintiff walked with a normal gait and at a reasonable pace; normal breath sounds; normal heart; no edema of the legs; normal reflexes and sensation; and no tenderness of the spine (R. 262–64) Her shoulders, elbows, wrists, knees, hips, ankles, and spine had a normal range of motion. (R. 265). Her EKG was normal (R. 262) Plaintiff could squat and walk on her toes and heels. (R. 264). Dr. Patel concluded that Plaintiff could perform fine and gross movements in both hands, and there were no gross sensory or motor deficits (R. 262).

On June 19, 2012, state agency medical consultant Jyothsna Shastry, M.D., found that Plaintiff did not have any severe physical impairments (R. 59). Examination revealed that her blood pressure was controlled, and that she suffered from no associated symptoms. (R. 59). David Terstein, M.D., reviewed Plaintiff's file on reconsideration and agreed with Dr. Shastry's conclusions. (R. 82).

On July 2, 2012, Plaintiff saw Victoria Munoz, N.P., complaining of lower back pain. Nurse Munoz found normal range of motion of all joints and no edema (Tr. 267).

On August 2, 2012, Plaintiff saw Mazie Trusty, N.P. Nurse Trusty's exam revealed that extension of the spine was limited, but with full flexion and lateral range of motion, without pain or restriction (R. 269).

## IV. ANALYSIS

There is virtually no basis in the medical evidence for the impairments claimed. All treatment occurred only after the disability applications were filed. Concerning mental impairments, Plaintiff saw a professional every few months and received medication. Both the treating and consulting professionals diagnosed Plaintiff with mild or moderate depression and anxiety. No professional believed there should be more than a moderate restriction on Plaintiff's activities. No medical professional, whether treating or consulting, found any serious physical impairment.

### A. Step 3 finding

The step 3 inquiry is whether the claimant's impairments, alone or in combination, equal in severity an impairment listed in 20 C.F.R. Pt. 404, subpt. P, app. 1. Step 3 is designed to short-circuit inquiry where an impairment is so clearly disabling that no further analysis should be necessary. As to this issue, the claimant bears the burden. The ALJ found that the claimant's depression and anxiety were severe, but not so severe as to satisfy Step 3.

As to mental impairments, Appendix 1 contains three lists of criteria, known as Paragraphs A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. The claimant must either (1) satisfy paragraphs A *and* B; or (2) satisfy paragraph C.[3]

---

[3] 12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activites; or

10

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractability; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

11

As to the first prong, the ALJ focused on Paragraph B. Paragraph B requires that a mental impairment result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation is one that is more than moderate, but less than extreme. Repeated and extended episodes of decompensation require at least three episodes within one year, or an average of once every four months, each lasting for at least two weeks.

The ALJ found only mild restriction of activities of daily living. He pointed to the function report, and the reported activities of, *e.g.,* showering, making meals, and going to church. (R. 23 ¶ 4) He found moderate difficulties as to concentration, persistence, or pace. The ALJ acknowledged Plaintiff's reported anxiety, susceptibility to stress, tendency to forget instructions, and inability to adapt well to changes in routine. (*Id.*) No episodes of decompensation were reported. I note also that there is no history of psychiatric hospitalization or outpatient treatment, and that two evaluating consultants found only mild daily living restriction. The ALJ's finding that paragraph B was not satisfied, then, was supported by substantial evidence of record, which the ALJ considered and cited. Under the standard of review, no more is required.[4]

---

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

    [4] Because the first alternative requires a positive finding as to both paragraphs A & B, it was not necessary for the ALJ to consider the "A" criteria, and he did not. Plaintiff's counsel takes umbrage at this, but points to no legal error.

As for the second prong, the ALJ found that the paragraph C criteria were not met, without further analysis. While more detail would be desirable, I will sustain that finding because there is no evidence in this record from which the Plaintiff could have satisfied her burden. The medical evidence, and even Plaintiff's own subjective testimony, do not establish repeated, extended episodes of decompensation; such marginal adjustment that even a minimal change would result in decompensation; or a history of one or more years' inability to function outside a highly supportive living arrangement. *See* Paragraph C, quoted in full at n.3, *supra*.

All of the medical evidence points to mild or moderate depression and panic attacks, controlled by medication. The evaluating experts all found mental and emotional functioning on a level consistent with coherent thought, concentration, and social functioning. Plaintiff claimed to remain home most of the time, but all of the objective medical evidence is against any conclusion that Plaintiff is marginal or unable to function outside the home.[5] Evidence of her church attendance, going out 2–3 times per week, visits to her uncle in New York, and ability to relate to her family, also undercut her self-reported symptoms.

### B.   RFC

An RFC need reflect only the claimant's "credibly established limitations"; the ALJ is not required to accept all claimed limitations for purposes of assessing the claimant's RFC. *Rutherford v. Barnhart*, 399 F. 3d 546, 554 (3d Cir. 2005). The RFC here was firmly based on the limitations imposed by her anxiety and depression. With due respect to her counsel's argument, the RFC was not required to reflect a whole range of physical limitations, particularly those that were not even claimed in her application.

---

[5]   I note in passing that Plaintiff applied for benefits just weeks after she had moved from Puerto Rico to New Jersey, where she seemingly had never lived before. That, and the fact she was not working, may in part account for any lack of social connections outside of her family circle.

The ALJ's findings of mental impairments of depression and anxiety, and his finding of no severe physical impairment, were supported by substantial evidence. That evidence, summarized above, Sections III.A & B, would scarcely admit of any other conclusion.

Based on those findings, the ALJ was constrained to make an RFC finding that contained no exertional limitations. The lack of exertional limitations is based on the lack of any significant physical impairment. The Plaintiff claimed high blood pressure, but this was not accompanied by any evidence that it manifested itself in limiting symptoms. At the evidentiary hearing, Plaintiff's counsel disclaimed any reliance on a back impairment, which allegedly occurred when she was 28 and had not prevented her from working for decades. The alleged back problem had not been claimed in the application, it had not been documented, and "so at this state of the game it [was] a little late to start," admitted counsel. (R. 46) Plaintiff claims diagnoses of scoliosis and/or degenerative disc disease. Every examining and treating medical professional, however, agreed that there was no significant physical limitation; at most they found some limitation of extension. There were no substantial limits on ability to perform basic physical activities: walking, moving extremities, fine and gross manipulation with the hands, and so on. *See* Section III.B, *supra.*

The RFC did, however, contain nonexertional limitations: "the claimant can understand, remember and carry out simple instructions, occasionally interact with the general public and occasionally travel to unfamiliar places." (R. 24 ¶ 5) These stemmed from the impairments of anxiety and depression, as found by the ALJ. The medical evidence does not even really go even that far. Dr. Hammons, who treated her at Mt. Carmel, assessed her as "mildly depressed." (R. 289) At Mt. Carmel, it was found that she had below average intellectual functioning, intact memory, a cooperative attitude, intact and goal-directed thought processes, normal affect, fair judgment, adequate to good impulse control, and fair insight. (R. 289–92) The evaluating professionals

essentially agreed. *See* Section III.A, *supra*.⁶ Dr. Flaherty's conclusion—that Plaintiff could understand, remember, and follow short/simple instructions; could learn and perform simple, routine tasks; and could interact minimally— is consonant with all of the medical evidence. (R. 61–63).

The only evidence of more severe impairment consisted of Plaintiff's testimony. A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. *See* SSR 96-7p, 1996 WL 374186, at *4.

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

---

⁶ The evaluators assigned GAF scores in the mid-50's. A GAF (Global Assessment of Functioning) result of 51–60 indicates the following: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

15

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence ... is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

Here, the ALJ did not wholly reject Plaintiff's testimony, but weighed it in the context of all the medical evidence in arriving at his finding of RFC. No medical evidence, for example, was consistent with Plaintiff's claim that she had some fifteen disabling panic attacks per month, and cried daily in bed. The ALJ also considered Plaintiff's claims in light of daily activities such as church attendance, visiting relatives, and so forth. Her earlier function reports, too, merited consideration, as the Plaintiff there portrayed her condition as far less serious than she did at the hearing.

Such weighing is what the substantial evidence standard requires the ALJ to do. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### C. Step 4 – Ability to Perform Past Relevant Work

At step four, the ALJ will find the claimant not disabled if she is able to perform past relevant work. As to this issue, the claimant bears the burden of showing she is not able to do so. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). Here, the past relevant work was as a laborer/house and office cleaner, which required lifting of perhaps 30 pounds.[7] (R. 26 ¶ 6)

The ALJ relied on the RFC and determined that nothing about Plaintiff's limitations was inconsistent with work as a house or office cleaner. And indeed it makes sense that the position could be performed by someone able to understand, remember, and follow short/simple instructions; learn and perform simple, routine tasks; and interact minimally. Here, Plaintiff makes much of her supposed physical inability to perform the job, but no significant physical limitations were found by the ALJ.

The ALJ's step four determination was supported by substantial evidence.

## V. CONCLUSION

For the reasons expressed above, the ALJ's decision is AFFIRMED.

Dated: May 18, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**

---

[7] This hearing testimony was inconsistent with the work history initially submitted by Plaintiff, in which she said she cleaned offices and also was self-employed as a housekeeper, jobs which involved four hours of walking, no more than one hour of standing, and lifting of not more than ten pounds. (R. 218–19)

17